SAFEWAY STORES *v.* SHWAYDER BROTHERS.

5-3389                                                    384 S. W. 2d 473

Opinion delivered December 7, 1964.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*Fulk, Wood, Lovett & Parham and S. Hubert Mayes, Jr.* for appellee.

PAUL WARD, Associate Justice. Two issues are raised on this appeal. One, is there an appealable order? Two, is Act 101 of 1963 constitutional as appellant seeks to apply it to the facts of this case? The facts necessary to an understanding of these issues are as hereafter briefly set forth.

On November 17, 1962 John E. Chronister was in one of the stores belonging to Safeway Stores, Inc. and sat down on a metal chair manufactured by Shwayder Brothers, Inc. (hereafter called appellee). The chair collapsed and Chronister was severely injured by the ensuing fall. On July 19, 1963 he filed suit against Safeway Stores (hereafter called appellant). On August 21, 1963 appellant answered and also cross-complained against appellee, a non-resident corporation, not authorized to do business in Arkansas. Appellant, after alleging acts of negligence on the part of appellee, stated that if appellant "is found to be liable in any degree to the plaintiff (Chronister), then this defendant (appellant)

is entitled to have judgment over and against" appellee for indemnity or contribution as provided by Ark. Stat. Ann., § 34-1001 (Repl. 1962) et seq., being the Uniform Contribution Among Tortfeasors Act.

Appellant obtained service on appellee under the provisions of Act 101 of 1963, Ark. Stat. Ann., §§ 27-2501 —27-2507 (Supp. 1963), known as the Uniform Interstate and International Procedure Act. There is no contention that the form or manner of service, as required by the Act, was defective. Appellee entered a special appearance to file a motion to vacate, quash, and set aside the said "purported summons and purported service". This motion was sustained by the trial court, and it is from this action of the trial court that appellant prosecutes this appeal.

*One.* Appellee makes an able argument that there is no appealable order in this case, and that therefore the appeal should be dismissed. To sustain this argument appellee relies heavily on what we said in a *per curiam* opinion in the case of *Robberson* v. *Steele Canning Co.,* 233 Ark. 988, 349 S.W. 2d 814. While that case appears on casual examination to be controlling in this case, we think a valid and logical distinction exists. In the *Robberson* case it will be observed that we said the trial court quashed the *"service* of summons", and that we also said: "we think the better practice is to require him either to stand upon the sufficiency of his *service* and permit a final order to be entered, or to have the return amended to conform to the rulings of the court". (Emphasis added.) In the cited case we think the court had in mind that it would be a waste of time, money and effort to perfect an appeal to this Court only to learn it was necessary "to have the return amended" and then perhaps start again on the long and expensive cause of perfecting another appeal. In other words, in the *Robberson* case, the trial judge was in effect saying to the appellant: when you amend your service I am ready to hear your case. The above situation was not, we think, the situation in the case here under consideration. Here,

the trial court did not quash the "purported summons" because of any defect in the way it was served—that is, a defect which could be amended. To the contrary, the trial court "held the attempted retroactive application of Act 101 . . . relating to service of summons on non-resident defendants is unconstitutional and void"; That holding by the court amounted in fact to a judgment on the merits of the real issue raised by this appeal. Not only so, but the trial court also said "this court is without jurisdiction as to" appellee. This certainly makes it clear that appellant would not be allowed under any circumstances to try its case against appellee. We must conclude therefore that the only relief available to appellant was to appeal to this Court. In that respect the trial court's order was final and appealable.

*Two.* As previously indicated, appellant's contention is that the trial court erred in holding said Act 101 unconstitutional as applied to appellee—a non-resident corporation. Putting it another way, appellant says: "The trial court erred in granting appellee's motion to quash on the ground that Act 101 of 1963 cannot apply retroactively". In other words, the decisive issue here, as appellant sees it, is whether said Act 101 deals with procedure or with the substantive rights of appellee. In our opinion the Act deals only with procedure (in this case), as contended by appellant, and is therefore governed by our decision in the case of *Harrison* v. *Matthews,* 235 Ark. 915, 362 S.W. 2d 704. There, in construing Act 54 of 1961 Ark. Stat. Ann. § 27-339 (Repl. 1962), we held service pursuant to the Act was good in "a case involving a cause of action that antedated the statute". In so holding we quoted with approval the following from *State ex rel. Moose* v. *Kansas City & M. Ry. & B. Co.,* 117 Ark. 606, 174 S.W. 248:

"The strict rule of construction contended for does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. These should receive a more liberal con-

struction, and should be given a retrospective effect whenever such seems to have been the intention of the Legislature.''

In the *Harrison* case we also said:

"Act 54 did not create new substantive rights. Whatever cause of action this appellant now has was already in being when the statute was adopted. Its only effect was to permit a plaintiff to obtain personal jurisdiction in the courts of this state over a nonresident defendant. The act is procedural in nature, merely providing in this instance a new forum for the enforcement of existing rights. Being procedural, the act applies to all cases filed after it became effective.''

It is of course conceded that Act 101 was enacted some months after Chronister was injured by the alleged negligence of appellee, but it did not, in our opinion, affect any substantive rights of appellee. It was remedial only and therefore must be construed restrospectively in this case.

Appellee makes the further contention that the aforementioned Act 54 is distinguishable from Act 101, and, based thereon, astutely argues that the *Harrison* case, *supra,* furnishes no sound basis for holding that service under Act 101 is constitutional as applied to a nonresident defendant. We recognize a difference in the two acts and have given consideration thereto. Act 54 is limited (insofar as we are here concerned) to a situation wherein the tortfeasor was domiciled in Arkansas at the time the cause of action arose. This is not true of Act 101, but we do not consider the distinction is one vital to the issue of constitutionality. It was pointed out in the *Harrison* case that the tortfeasor was a *non-resident* at the time of service, just as appellee was a *non-resident* in this case. The Court's significant language in the *Harrison* case regarding "domicile" was this: "When a tort occurs in Arkansas, as it did here, this state has a sufficient connection with the controversy to justify basing jurisdiction upon domicile . . .", meaning of course

"domicile" when the cause of action arose. Having so held, we think it is even more reasonable and logical to say the state has a sufficient connection with the controversy in this case to justify basing jurisdiction upon the fact that appellee, though a non-resident, unqualified to do business in Arkansas, was nevertheless doing business in this state, using our markets, and deriving profits therefrom.

Appellee's contention that this case is controlled (in its favor) by *Gillioz* v. *Kincannon,* 213 Ark. 1010, 214 S.W. 2d 212, has been sufficiently answered in the *Harrison* case, *supra.*

The order of the trial court is accordingly reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice (dissenting). The Majority Opinion says: "Two issues are raised on this appeal. One, is there an appealable order? Two, is Act 101 of 1963 constitutional as appellant seeks to apply it to the facts of this case?"

The Majority Opinion then proceeds to decide both points. I never reach the second point because I am thoroughly convinced that there is no appealable order in the record in this case. Here is the order (copied in full) from which the appeal was attempted to be taken:

"Comes on for hearing the Special Appearance and Motion to Quash of Schwayder Brothers, Inc. and upon hearing before the Court, arguments and briefs of counsel and other matters appearing before the Court, it is BY THE COURT CONSIDERED, ORDERED, AND ADJUDGED that the attempted retroactive application of Act 101 of the Acts of Arkansas for 1963, relating to service of summons on non-resident defendants is un-

constitutional and void; that no sufficient service has been made on Schwayder Brothers, Inc.; that this Court is without jurisdiction as to Schwayder Brothers, Inc.; that Special Appearance and Motion to Quash of Schwayder Brothers, Inc. be and the same is hereby granted and the purported Summons and purported service thereof on Schwayder Brothers, Inc. be and same is hereby vacated, quashed, set aside and held for naught; that the exceptions of defendant Safeway Stores, Incorporated be and the same are hereby specifically preserved.''

There was never any statement by the appellant that it stood on the above order; and there was never any order of dismissal. In short, I find no final order from which an appeal could be taken. The case of *Robberson* v. *Steele Canning Co.*, 233 Ark. 988, 349 S.W. 2d 814, involved an order quashing service of summons, just as in the case at bar; and we held in *Robberson* v. *Steele Canning Company* that the order quashing the service was not final and appealable. I cannot distinguish that case from the case at bar. The decision in *Robberson* v. *Steele* was not new law; it followed previous decisions of this Court. See *Harlow* v. *Mason*, 117 Ark. 360, 174 S.W. 1163; and *Yocum* v. *Okla. Tire & Supply Co.*, 191 Ark. 1126, 89 S.W. 2d 919. I see no reason to depart from these cases. In *Nunez* v. *O.K. Processors*, 238 Ark. 346, 381 S.W. 2d 754, we allowed the appellants to go back to the Trial Court and obtain a final order so the case would not have to be rebriefed. In the case at bar, we are not even requiring that to be done. I maintain that there is no final and appealable order in the case at bar and therefore I dissent from the Majority holding on that point. I never reach the second point.